Bertram R. Gelfand, S.
In this proceeding to judicially settle the account of ancillary executors of a decedent who died a resident of Florida, all issues have been disposed of by previous decision, except the fee of the attorney for the executor. This fee is fixed and allowed in the amount requested.
The court is constrained to comment upon the unfortunate fact pattern present in this matter as a result of the laws of the State of Florida. Decedent was a woman of mature years. She had resided for most of her life in the State of New York. At the time of her death, the bulk of her estate was located in New York, although decedent herself had become a resident of the State of Florida. Decedent’s last will and testament which was executed on October 19, 1967 clearly reflects an intent to have her husband, her attorney and her accountant all act as primary coexecutors of her estate to the maximum extent possible under the applicable laws of each jurisdiction which would be involved in the administration of her estate. As indicated in an earlier decision rendered with reference to this estate, this court would have entertained an application for original probate pursuant to SCPA 1605 if the proponent had chosen to so proceed (Matter of Harrison, NYU, June 12, *808 1974, p 19, col 2). It appears that decedent’s relationship with both her attorney and her accountant was one of long standing and represented the type of trusted relationship upon which people normally seek to depend for the administration of their estates. The duties of an executor do not involve the practice of any profession that is ordinarily subject to State licensing provisions. It is a personal responsibility which individuals confer on those they trust without regard to any fixed professional training. The only disqualification to serve as executors under the Florida statute imposed upon the attorney and the accountant is their lack of residence in that State, coupled with their lack of required blood relationship to the decedent. The injustice of this restriction to executors who are neither related to a decedent nor residents of Florida is exceeded by the inequitable restriction it imposes upon residents of Florida. The right to choose one’s own executors represents a fundamental property right of a competent adult having testamentary capacity. There is no logical basis for imposing upon a party seeking to become a resident of the State of Florida a forfeiture of their freedom of choice in naming an executor as a precondition to residence. It is difficult to distinguish the right of a party to do business with whom they choose in their lifetime from their right to designate the same parties to handle their affairs after death. In the instant matter the desire of the decedent to circumvent the statutory restriction placed upon her in selecting her executors resulted in burdening her will with circuitous provisions otherwise unnecessary which rendered the administration of her estate unduly complex.
At best, the Florida statute is inequitable. It is the opinion of this court that the residency restrictions it places upon its citizens in naming executors are not only inequitable but are offensive to the spirit and letter of the United States Constitution. The Supreme Court of the United States has looked with disfavor upon States imposing preconditions to residency that constitute a restriction on the free movement of parties from State to State. In Sugarman v Dougall (413 US 634), the court held prohibitions against aliens holding competitive civil service jobs to be constitutionally offensive. It is difficult to conceive that prohibiting an alien from taking a competitive civil service examination is constitutionally offensive and prohibiting a nonresident from serving as an executor would not also be unconstitutional.
In Shapiro v Thomson (394 US 618, 630-631) in striking *809 down State residency requirements with reference to receiving welfare benefits, the court stated: "We have no occasion to ascribe the source of this right to travel interstate to a particular constitutional provision. It suffices that, as Mr. Justice Stewart said for the Court in United States v Guest, 383 US 745, 757-758 (1966): 'The constitutional right to travel from one State to another * * * occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized * * * [T]he right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution.’ ”
The understandable desire of the State of Florida to promote its economy by insuring the maximum of business for both its banking institutions and attorneys should not be enhanced by interference with the right of new residents who migrate to seek the benefit of its gentle climate to select the executors of their choice. It is hoped that legislative wisdom will correct this unfortunate restriction without the necessity for some estate to assume the burden of a search for judicial relief that may extend from the courts of Florida into our Federal system.
Decree signed.